Commonwealth *v.* Thomas, Appellant.

Argued September 30, 1946. Before BALDRIGE, P. J., RHODES, HIRT, RENO, DITHRICH, ROSS and ARNOLD, JJ.

*Harry A. Estep,* with him *Joseph I. Winslow,* for appellant.

*Charles B. Jarrett,* Assistant District Attorney, with him *Artemas C. Leslie,* District Attorney, for appellee.

OPINION BY DITHRICH, J., November 14, 1946:

Upon an indictment containing two counts, the first charging the defendant in the formal legal phraseology of Section 718 of the Penal Code of 1939, P. L. 872, 18 P. S. 4718, with administering to a woman named a certain drug, etc., with intent to procure a miscarriage, and the second charging the use of a certain instrument with like intent, the jury returned a general verdict of guilty. From the overruling of his demurrer to the Commonwealth's evidence and the refusal of his motion for a new trial, defendant appealed.

The woman upon whom defendant was convicted of committing or attempting to commit an abortion was married, but she and her husband had not been living together as man and wife for about two years before she became pregnant or felt that she was pregnant. Her condition was due to an illicit relationship which she had been carrying on with a mutual friend of her husband and herself for about a year. Being two weeks beyond her regular menstrual period for the first time in her thirty-seven years of life, during eight of which she had been married, she became alarmed and consulted the defendant, a practicing physician.

She was taken to his office by her paramour and, according to her testimony, after taking her case history and doing nothing more than feeling her pulse, the de-

fendant told her she was pregnant. He added, however, that she "wasn't very far gone" and that an operation could be performed without any danger.

According to arrangement, she returned the following evening to defendant's office, again in the company of her paramour, who paid the defendant's fee of $350 in cash in advance. She was then taken after dark by a woman employed by or in the service of defendant to a house in East Liberty, where the illegal operation was alleged to have been performed the following day. According to defendant's own testimony on direct examination in answer to the question "Who took her out there and why was she taken?" it was because "She needed some place to stay. Hospitals are pretty full. *She didn't want to go to the hospital anyhow on account of her relationship with Mr. Berger."* (Italics supplied.)

Following the operation she was taken to Berger's home, where her condition became critical, and after having been visited there by defendant on two separate occasions, on one of which he prescribed a drug which she took, she was removed to the Magee Hospital where she remained for eight weeks. While there she was under the service of Dr. E. V. Helsel, who testified that "I felt she was going to die" when she did not respond to treatment for a considerable period of time. Dr. Helsel specializes in gynecology, and after eliminating three other causes that could have brought about the patient's condition, he gave it as his unequivocal opinion that her condition was caused by an abortion.

Defendant testified that in the unnamed house where the patient was taken from his office "I cleaned out the inside of her uterus." That, according to his testimony, was done ". . . to get away from this endometritis (infection of the lining of the uterus) . . . she had." Dr. Helsel, the gynecologist, testified that ". . . no one would treat endometritis in the face of a missed period."

On the Commonwealth's evidence alone, it was clearly entitled to go to the jury, and the learned trial judge properly overruled defendant's demurrer. The first assignment of error is dismissed.

The second assignment is that the learned court below erred in charging the jury as follows: "It is not essential to a conviction in this case that the Commonwealth prove that the woman was actually pregnant, but it is necessary to establish by evidence that the unlawful act was done with intent to procure a miscarriage of the woman in case she was pregnant. If the parties feared that the woman may have become pregnant as the result of illicit connection and an instrument was used or drug administered with intent to procure her miscarriage if she was pregnant, then such a person or persons are guilty, although she may not have been actually pregnant."

In our opinion, that assignment of error is ruled squarely by *Commonwealth v. Longwell*, 79 Pa. Superior Ct. 68. The portion of the charge complained of is almost identical with that portion of the opinion of this court appearing on pages 72 and 73: "While it is not essential to a conviction in cases of this character that the Commonwealth prove that the woman was actually pregnant, it is necessary to establish by evidence that the unlawful act be done with intent to procure a miscarriage of the woman in case she is pregnant. If the parties feared that the woman may have become pregnant as the result of illicit connection and administered the drug, or used the instrument or other means, with intent to produce her miscarriage, if she was pregnant, then they are guilty although she may not have been actually pregnant."

The chief burden of defendant's complaint is that the law laid down in *Commonwealth v. Longwell*, supra, and correctly followed by the court below in its charge, is not applicable to the fact in this case since "Having received no history of illicit relationship" he did not ". . .

have any reason to believe or fear that she was pregnant." We have already quoted his direct testimony that the woman did not want to go to a hospital on account of her relationship with Berger; and in a signed statement taken in the office of the district attorney immediately following his arrest and which was in evidence, in answer to the question "Q. Did she state at that time (her first visit to his office) she feared she was pregnant?" he said, "A. Oh, yes, she was very much alarmed about it; she was in love with this man, he was married, and she was afraid he couldn't get a divorce to marry her." All the assignments of error are dismissed.

The judgment is affirmed and it is ordered that the defendant appear in the court below at such time as he may be there called and that he be by that court committed until he has complied with the sentence or any part of it which had not been performed at the time the appeal in this case was made a supersedeas.